UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FRANCISCO ALVAREZ<br><br>Defendant. | Case No.: 19cv1489-GPC<br>18cr1653-GPC<br><br>**ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 AND DENYING MOTION TO STRIKE GOVERNMENT'S RESPONSE AND EXHIBITS AND DENYING MOTION FOR ORDER TO DISCLOSE GRAND JURY TRANSCRIPTS**<br><br>**[REDACTED -ORIGINAL FILED UNDER SEAL]** |

Petitioner Francisco Alvarez ("Petitioner"), proceeding with counsel, filed an amended petition for writ of habeas corpus pursuant to 28 § U.S.C. § 2255. (ECF No. 53.) The United States of America ("Government") filed a response. (ECF No. 57.) When the Government filed its response late, Petitioner filed a motion to strike the

1

Government's untimely response and grant the petition and also a motion to strike irrelevant exhibits and a motion for order to disclose grand jury transcripts. (ECF. No. 58.) In response to the Court's order, the Government filed a response. (ECF No. 61.) Petitioner filed a reply to the Government's response. (ECF No. 63.)

For the reasons set forth below, the Court DENIES the petition for writ of habeas corpus and DENIES Petitioner's motion to strike the Government's response and irrelevant exhibits[1] and motion for order to disclose grand jury transcripts.

## PROCEDURAL BACKGROUND

On March 28, 2018, a federal grand jury indicted Petitioner on three counts for 1) possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1); 2) possession of a firearm by an unlawful drug user in violation of 18 U.S.C. § 922(g)(3); and 3) knowingly making a false written statement in connection with the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6). (ECF No. 1, Indictment.)

---

[1] Petitioner moves to strike the Government's response as untimely as it was filed three days late, on a Monday instead of a Friday. (ECF No. 58 at 2-3.) Respondent argues that Petitioner has not shown prejudice due to the filing of the untimely opposition one business day late. Respondent explains that the delay was due to reviewing the voluminous medical records attached to Petitioner's amended petition. (ECF No. 61 at 3 n.2.) The Court has discretion and the inherent power to strike a filing and in the interest of considering the petition on the merits, the Court DENIES Petitioner's motion to strike the Government's untimely opposition. *See Ready Transp., Inc. v. AAR Mfg., Inc.,* 627 F.3d 402, 404 (9th Cir. 2010) (district court has inherent power to control its docket, including power to strike items from the docket); *Goodes v. Pacific Gas & Elec. Co.,* No. C 12–01667 SI, 2012 WL 2838832, at *1 n.3 (N.D. Cal. July 10, 2012) (court considered the plaintiffs' late opposition in the interest of deciding defendant's motion on its merits). In addition, Petitioner moves to strike the Government's exhibits attached to its opposition as prejudicial and not relevant to the issues in this petition. (ECF No. 58 at 5.) The Government disagrees. (ECF No. 61 at 4-7.) While the Court disagrees with Petitioner and concludes that the documents are relevant as they relate to the underlying criminal case he is challenging, the Court did not rely on the contents of these exhibits to rule on the petition. Instead, a couple of the documents were used for purposes of describing the procedural background. Accordingly, the Court DENIES Petitioner's motion to strike the Government's exhibits.

2

On July 26, 2018, Petitioner, with the advice of counsel, plead guilty to Count 3 of the Indictment for knowingly making a false written statement in the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6) pursuant to a plea agreement. (ECF No. 24 ("Plea Agreement").) Petitioner signed the plea agreement and attested that he discussed the facts of the case with his counsel and understood the charges and consequences of pleading guilty. (*Id.*) During the guilty plea hearing before the Magistrate Judge, Petitioner represented that the plea was knowing and voluntary and that he fully understood the terms of the agreement. (ECF No. 44 at 15–16.[2]) Specifically, the presiding Magistrate Judge inquired into the Petitioner's state of mind during the plea colloquy:

> COURT: I understand you are all in custody, but I am going to ask you and I need you to tell me if you had any alcohol or drugs currently, if you are under the influence of any alcohol, drugs or medicine, or if you have taken any medicine, alcohol, or drugs within the last 24 hours. Mr. Alvarez?
>
> ALVAREZ: No, Your Honor.
>
> COURT: Is there anything going on in your situation, your personal life, that has got you – placed so much stress upon you that you are not able to think clearly, that you are not able to understand the proceedings, that you are not able to communicate or understand what is going on? Anything that prevents you from fully understanding what we are doing today? Mr. Alvarez?
>
> ALVAREZ: No.

(*Id.* at 4-5.)

The Magistrate Judge again confirmed whether Petitioner understood what was happening and whether he had reasons that he did not feel like he was competent to

---

[2] Page numbers are based on the CM/ECF pagination.

3

proceed with the plea. (*Id.* at 6-7.) When the Magistrate Judge asked Petitioner's counsel whether he had any reasons to believe his client was not fully competent, counsel responded in the negative. (*Id.* at 7:23-25.) The Magistrate Judge further asked whether Petitioner was entering the plea agreement freely and voluntarily and whether anyone had threatened him or coerced him into pleading guilty, and he responded in the negative. (*Id.* at 8:1-14.) In conclusion, the Magistrate Judge found that the guilty plea was made knowingly and voluntarily and with a full understanding of the nature of the charges, the constitutional rights and all consequences of the plea. (*Id.* at 27:6-13.) Subsequently, the Magistrate Judge issued Findings and Recommendations that Petitioner's guilty plea was made "knowingly, intelligently, and voluntarily, and did not result from force, threats, or promises (other than those made in a plea agreement)" and he was competent to enter a plea. (ECF No. 25 at 2-3.)

On July 27, 2018, the undersigned adopted the Findings and Recommendation of the Magistrate Judge and accepted the guilty plea. (ECF No. 27.) On August 9, 2018, Petitioner was sentenced to a time-served sentence on Count 3, the remaining counts were dismissed and Petitioner was subject to supervised release for three years. (ECF No. 32.) On April 2, 2021, the Court granted Petitioner's motion for early termination of supervised release. (ECF No. 66.)

On August 8, 2019, Petitioner timely filed a preventative petition for writ of habeas corpus under 28 U.S.C. § 2255 seeking to vacate his guilty plea as being involuntary and seeking to dismiss the indictment in violation of his Fifth Amendment due process rights. (ECF No. 39.) He claims that at the time he plead guilty, he was not competent because "he was under medication, suffering from serious psychological delusions, real constant threats to his safety, constant humiliations from inmates, and extreme phobias." (*Id*. at 4.) He also claims the indictment was secured by misleading statements made to the

4

grand jury. (*Id.* at 13-14.) On January 24, 2020, Petitioner filed an amended petition and added a claim for ineffective assistance of counsel for defense counsel's failure to adequately assess whether Petitioner could have formed the required mens rea for the alleges crimes and whether he could effectively and meaningfully assist in his own defense and failed to adequately investigate Petitioner's long history of psychological problems. (ECF No. 53 at 3-4.) On February 24, 2020, the Government filed an opposition. (ECF No. 57.) In response to the Government's late filing, Petitioner filed a motion to strike the Government's untimely response and to strike irrelevant exhibits as well as a motion for an order to disclose grant jury transcripts. (ECF No. 58.) The Government filed a response. (ECF No. 61.) On September 29, 2020, Petitioner filed a reply. (ECF No. 63.)

**FACTUAL BACKGROUND**

On August 13, 2017, the San Diego County Sheriff's Department ("SDSD") responded to a domestic disturbance after Petitioner's mother called to report that her son refused to turn down loud music. (ECF No. 53-1, Ex. A-9.) When two SDSD Deputies arrived, they announced their presence and asked Petitioner to open his bedroom door. (*Id.*) Petitioner refused, told the officers to leave, and after the Deputy asked Petitioner to open the door again, he stated "how about I have guns in here." (*Id.*) Subsequently, the Deputies heard a shotgun rack from inside Petitioner's bedroom. (*Id.*) Multiple deputies then responded to assist. (*Id.*) After making telephone contact and his refusal to exit the home, SDSD left the scene once Petitioner stated he was not going to hurt anyone. (*Id.*)

On September 9, 2017, Petitioner purchased a DSA rifle, which is an AR-15 assault-style firearm. (ECF No. 53-1, Ex. A-15.) In order to purchase the firearm, Alverez was required to fill out a Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Form 4473. (*Id.*) Question 11(e) of the form asks whether the applicant is an

5

"unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug or any other controlled substance?" (*Id.*) Question 11(e) also states in bold letters, **"Warning: The use or possession of marijuana remains unlawful under Federal Law regardless of whether it has been legalized or decriminalized for medicinal or reactional purposes in the state where you reside."** (*Id.*) On September 29, 2017, when he picked up the firearm, Petitioner was required to recertify that all his answers on the form were true. (*Id.*)

On October 1, 2017, two days after he picked up the DSA rifle, SDSD received a call from a concerned citizen about Petitioner's social media posts containing numerous pictures, posts, and comments depicting marijuana and firearms. (ECF No. 57-1, ROI 1 at 2-3.) In response, ATF began to surveil Petitioner's home. (*Id.*)

On October 3, 2017, SDPD deputies received a 911 call from Petitioner's brother stating Petitioner was attempting to break down his door and was possibly in possession of a firearm. (ECF No. 53-1, Ex. A-10.) When SDPD Deputies asked Petitioner to come out of the house, he complied and briefly exited the home. (*Id.*) Deputies eventually left the scene once it was determined no crime had been committed. (*Id.*)

On October 4, 2017, ATF agents obtained and executed a search warrant of Petitioner's home. (ECF No. 57-3, ROI 2 at 4.) ATF agents seized seven firearms, over 8,000 rounds of assorted ammunition, 22 grams of marijuana, marijuana paraphernalia, and several cellphones. (*Id.* at 3-5.) A search warrant of Alverez's phone also revealed his Instagram account, which depicted photos of him in possession of firearms and marijuana. (ECF No. 57-2, ROI 3 at 9-10.) On April 11, 2018, after a long standoff with SDSD in its effort to extricate him from his residence, Petitioner was arrested and taken into custody. (ECF No. 53-1, Ex. A-8.)

/ / /

19cv1489-GPC
18cr1653-GPC

**DISCUSSION**

## A. Standard of Review on 28 U.S.C. § 2255

Section 2255 authorizes this Court to "vacate, set aside, or correct the sentence" of a federal prisoner on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). To warrant relief under section 2255, a prisoner must allege a constitutional or jurisdictional error, or a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783 (1979) (quoting *Hill v. United States*, 368 U.S. 424 (1962)).

## B. Waiver of Trial and Voluntariness of Guilty Plea/Waiver of Right to Appeal and Collaterally Attack Sentence

Petitioner argues that his Fifth Amendment right was violated by the involuntary nature of his waiver of jury trial and guilty plea. In response, Respondent maintains that Petitioner waived his right to appeal or collaterally attack his conviction and that the record demonstrates that his guilty plea was voluntarily and knowingly made.

Due process requires that a guilty plea be both knowing and voluntary. *See Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Bousley v. United States*, 523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'") (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). "To determine the voluntariness of the plea, we look to the totality of the circumstances, examining both the defendant's subjective state of mind and the constitutional acceptability of the external forces inducing the guilty plea." *Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007) (internal quotation marks omitted). A habeas petitioner bears

7

the burden of establishing that his guilty plea was not voluntary and knowing. *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006) (citing *Parke v. Raley,* 506 U.S. 20, 31-34 (1992)).

A valid waiver of a constitutional right demands that a defendant "must have that degree of competence required to make decisions of very serious import." *Chavez v. United States*, 656 F.2d 512, 518 (9th Cir. 1981). A court must look at whether a "mental illness has substantially impaired his or her ability to make a reasoned choice among the alternatives presented and to understand the nature and consequences of the waiver." *Id.*

In *Chavez*, the court found that the evidence that was before the court when it accepted the guilty plea created doubt sufficient to warrant an evidentiary hearing as to the defendant's ability to make a reasoned choice. *Id.* at 519. The defendant had a "history of antisocial behavior and treatment for mental illness", "an emotional outburst in open court, resulting in [the defendant's] forcible removal from the courtroom," "previous psychiatric finding of insanity based upon psychoneurosis and the use of drugs", "two psychiatric reports, neither addressing the issue of competence to plead guilty, one indicating 'adequate judgment,' the other indicating poor insight and judgment", "emotional outbursts and Chavez's firing of his attorneys in connection with the guilty plea issue" and "an inference that Chavez had not even attempted to plea bargain." *Id.*

Yet, the fact that a criminal defendant suffers from depression, stress or anxiety will not render him incapable of knowingly and voluntarily pleading guilty. *Tanner v. McDaniel*, 493 F.3d 1135, 1145-46 (9th Cir. 2007) (rejecting claim that petitioner's depression rendered his guilty plea involuntary where plea hearing record indicated that petitioner "lucidly and voluntarily decided to plead guilty"); *United States v. Yell*, 18 F.3d 581, 582-83 (8th Cir. 1994) (defendant's guilty plea was not involuntary despite claims

8

plea was induced by stress and defendant's difficulty being separated from his family during pretrial detention); *Locklear v. Berghuis*, No. 1:09–cv–924, 2013 WL 706055, at *8 (W.D. Mich. Jan. 31, 2013) (holding that petitioner's plea was voluntary despite evidence that petitioner suffered from depression and lived with "a death wish"); *United States v. Hibler*, No. 10–10137–EFM, 2012 WL 2120001, at *5 (D. Kan. June 11, 2012) ("Although Hibler makes a credible argument that he was experiencing stress at the time he pleaded guilty, he has not alleged the existence of any evidence showing that he did not plead guilty of his own free will."). The Tenth Circuit has recognized, "deadlines, mental anguish, depression, and stress are inevitable hallmarks of pretrial plea discussions," but "such factors considered individually or in aggregate do not establish that [a criminal defendant's] plea [is] involuntary." *Miles v. Dorsey*, 61 F.3d 1459, 1470 (10th Cir. 1995), *cert. denied* 516 U.S. 1062 (1996). Rather, as the Ninth Circuit has explained, a defendant's mental anguish will render his plea involuntary only if it caused him to be "unable to make the decision to plead guilty freely and intelligently." *Tanner*, 493 F.3d at 1145-46; s*ee Ybarra v. United States*, 461 F.2d 1195, 1199 (9th Cir. 1972) (guilty plea was voluntary even though petitioner alleged his mind was hazy and he was suffering from drug addiction withdrawal symptoms because he did not claim he did not understand the nature of the proceedings at the time of the plea or did not understand what he was doing when he pleaded guilty).

In *Hibler,* the defendant argued he was coerced to plead guilty to protect his son from further abuse and from pressure from his attorney. The court concluded that the defendant's decision to "plead guilty in hopes of expediting his son's placement with relatives was a voluntary choice between the alternatives available to him and that every criminal defendant deciding whether to enter a guilty plea is undoubtedly influenced by factors extraneous to the individual's guilt or innocence, such as offers of leniency, the

9

weight of the evidence, and the advice and wishes of counsel, family, and friends. So long as these influences do not overbear the defendant's free will and compel him to plead guilty, the decision to plead guilty is uncoerced." *Hibler,* 2012 WL 2120001, at *5.

In this case, Petitioner argues that his guilty plea was not knowing and involuntary because he "was under medication suffering from psychological delusions, real constant threats to his safety, constant humiliations from inmates, and extreme phobias." (ECF No. 53 at 9.) Specifically, Petitioner claims that he was heavily medicated by the medical staff at the MCC "before and right after he 'accepted' the Government's dictated terms for his plea agreement." (ECF No. 63 at 3.) He also maintains he agreed to plead guilty to time served because he wanted to be released from custody due to the "oppressive and unusually punitive conditions" at the MCC. (ECF No. 53 at 10-11.) The Government argues Petitioner's mental health issues were fully disclosed as a matter of record. (ECF No. 57 at 10.) The Government further contends that Petitioner's behavior at the change of plea hearing appeared intelligent and voluntary to the Magistrate Judge. (*Id.* at 11.)

After a careful review of the record before the Court, the totality of circumstances demonstrates that Petitioner's anxiety and obsessive-compulsive disorder ("OCD") and opioid addiction did not substantially impair his ability to make reasoned choices when Petitioner entered into a plea agreement on July 26, 2018. While Petitioner may not have been competent to plead guilty at the time of his arrest on April 12, 2018, and shortly thereafter, he was treated at ███████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████. (ECF. No. 56, Ex. A-6, MCC/BOP Medical Records (UNDER SEAL).) At the time of his plea agreement and plea hearing in July 2018, the medical records clearly show that Petitioner had been successfully treated physically and mentally and he was no longer under the

10

influence of any medication and consequently, his mental health was stable. *See Chavez*, 656 F.2d at 518 ("evidence of possible present incompetence, such as a history of psychiatric problems in the remote past, may be so overshadowed by other evidence of present competence that it does not demand further investigation at an evidentiary hearing").

When Petitioner was arrested on April 11, 2018, ███████████████ ██████████████████████████████████. (ECF No. 50, Alvarado Medical Records at 20[3] (UNDER SEAL); ECF No. 56, Ex. A-6, MCC/BOP Medical Records, BATES 222-224 (UNDER SEAL).) ███████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████. (ECF No. 56, MCC/BOP Medical Records, BATES 92, 93, 240, 248 (UNDER SEAL); ECF No. 50, Alvarado Medical Records at 23, 27-30, 40 (UNDER SEAL).) ████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████. (ECF No. 56, MCC/BOP Medical Records, BATES 92, 93 (UNDER SEAL); ECF No. 50, Alvarado Medical Records at 23, 27-30, 40 (UNDER SEAL).) ████████████████████ ████████████████████████████████████████████ ██████████████. (ECF No. 56, MCC/BOP Medical Records, BATES 93, 95 (UNDER SEAL).) ████████████████████████████ ████████████. (*Id*. at BATES 243 (UNDER SEAL).)

---

[3] Page numbers for the Alvarado Hospital Medical Records are based on the facsimile page numbers.

11

█████████████████████████████████████████

██████████████. (*Id.* at BATES 94 (UNDER SEAL).) ████████████

███████████████████████████████████████████████.

(*Id.* (UNDER SEAL).) ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ (*Id.*

(UNDER SEAL).) ████████████████████████████

█████████████████. (*Id.* at BATES 95 (UNDER SEAL).)

████████████████████████████████

███████ (*Id.* at BATES 104 (UNDER SEAL).) ████████████████

███████████████████████████████████████.

(ECF No. 50, Alvarado Medical Records at 27 (UNDER SEAL).) ██████████

███████████████████████████████

(*Id.* at 40-51 (UNDER SEAL).)

█████████████████████████████████████

█████████████████████████████████████

██████████████. (ECF No. 56, MCC/BOP Medical Records, BATES 194-

205, 210 (UNDER SEAL).) █████████████████

███████████████████████████████████████████

████████████████████████████████

█████████████████████████████ (*Id.* at

BATES 194, 200 (UNDER SEAL).) ███████████████████

███████████ (*Id.* at BATES 196 (UNDER SEAL).) █████████

██████████████████████████████████████

██████████████ (*Id.* at BATES 94 (UNDER SEAL).)

19cv1489-GPC
18cr1653-GPC

1 ████████████████████████████████████████████

2 ████████████████████████████. (*Id.* at BATES 97-100

3 (UNDER SEAL).) ████████████████████████████

4 ████████████████████████. (*Id.* at BATES 96 (UNDER

5 SEAL).) ████████████████████████████████

6 ████████████████████. (*Id.* at BATES 95.)

7 ████████████████████████████████████████████

8 ████████████████████████████████████████

9 ████████████████████████████████████████

10 ████████████████████████ (*Id.* at BATES 93 (UNDER

11 SEAL).) ████████████████████████████████

12 ████████████████████████████████████████

13 █████████ (*Id.*, BATES 92 (UNDER SEAL).) ████████████

14 ████████████████████████████████████████

15 ██████. (*Id.* (UNDER SEAL).) ████████████████ (*Id.*

16 (UNDER SEAL).) ████████████████████████████

17 ████████████████████████ (*Id.* at BATES 91

18 (UNDER SEAL).) ████████████████████████████

19 ████████████████████████████████ (*Id.* (UNDER

20 SEAL).)

21 ████████████████████████████████████████████

22 █████████.[4] (*Id.* at BATES 90 (UNDER SEAL).) ████████████

23

24 ─────────────────

25 [4] ████████████████████████████████████████

26 ████████████████████████████

1 ██████████████████████████████████████████████

2 ██████████████████████████████████. (*Id.* (UNDER SEAL).) ████████

3 ████████████████████████████████████████████

4 ██████████ (*Id.* (UNDER SEAL).) ██████████████████████

5 ████████████████████████████████████████████████ (*Id.*

6 (UNDER SEAL).) ████████████████████████████████ (*Id.*

7 at BATES 90 (UNDER SEAL).) ███████████████████████

8 ███████████████████████████████████████████████████

9 █████. (ECF No. 24.)

Petitioner's first claim that he had been "under medication and suffering from a variety of OCD paranoia and hallucinations" during the waiver and change of plea hearing on July 26, 2018 is belied by the record. (ECF No. 63 at 6.) ████████████

13 ██████████████████████████████████████████████

14 ███████████████████████████████████████████████

15 ████████████████████████████. (ECF No. 56, MCC/BOP Medical Records, BATES 93, 95 (UNDER SEAL).)  Despite his prior mental incompetence when he was arrested, by the time of his plea hearing in July 2018, ████████████████████

18 ███████████████████████████████████████████████

19 ███████████████████████████████████████████ The evidence presented does not raise reasonable doubt about Petitioner's competence to plead guilty.  *See Chavez,* 656 F.2d at 518.

Next, in a declaration, Petitioner states that he plead guilty because he wanted to get out of the MCC due to the humiliation he suffered by the other inmates.  (ECF No. 53-1, Ex. A-16, Alvarez Decl. at 61-65.)  He explains that because his withdrawal symptoms caused him diarrhea and paranoid delusions, the other inmates openly mocked

14

him and complained about his behavior. (*Id.* at 61, 63.) In addition, he was kicked out of about eight different cells due to his OCD. (*Id.* at 63.) Therefore, when he was offered the plea agreement for time served, despite that fact that he believed he was not guilty on Count 3, he wanted to escape the torture and threats at the MCC. (*Id.*) Moreover, his attorney encouraged him to plead guilty to one count stating it was best for him. (*Id.* at 63-64.) He plead guilty so he could be released from the MCC and he did not mention his psychological and physical trauma that was still affecting him during the plea hearing. (*Id.* at 64.) He questions why nobody else told the judge about his psychological condition, the medications he was given by the MCC and hospital staff, and the psychological stressors affecting him. (*Id.*)

Petitioner's declaration is not supportive because he presents general statements of stress due to being mocked by other inmates which is not sufficient to demonstrate his plea was involuntary. *See Tanner*, 493 F.3d at 1145-46; *Miles*, 61 F.3d at 1470. Moreover, he provides no specific facts concerning the threats and torture he suffered at the MCC. Furthermore, he does not address his stable mental condition after he became medication and opioid free. Instead, the medical records show that he voluntarily made a reasoned decision to plead guilty rather than go to trial in order to be released from custody based on a time served sentence.

Moreover, Petitioner's exchange in court with the Magistrate Judge during the change of plea hearing also points to a knowing and voluntary waiver. A defendant's "statements at the plea colloquy carry a strong presumption of truth." *Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012) (citing *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) ("[T]he representations of the defendant [at a plea hearing] . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); *United States v. Ross*, 511 F.3d 1233, 1236

(9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea.") (citations omitted)). Petitioner entered into a written plea agreement with advice of counsel, indicated that his plea was knowing and voluntary, and that he fully understood the agreement. (ECF No. 44 at 4–5.) The Magistrate Judge questioned Petitioner and further confirmed Petitioner's understanding of the plea agreement. (*Id.*) Responding to the Magistrate Judge's inquiry, Petitioner confirmed that he was not under the influence of medication, and that there was nothing going on in his situation that placed him under so much stress such that he was not able to think clearly or understand the proceedings. (*Id.*) These statements by Petitioner have a "strong presumption of veracity in subsequent proceedings attacking the plea." *See Ross*, 511 F.3d at 1236. The totality of circumstances from Petitioner's medical records, Petitioner's statements during the colloquy, and the Magistrate Judge's independent findings support a conclusion that Petitioner knowingly and voluntarily waived his right to trial in entering into a plea agreement. Because Petitioner knowingly and voluntarily waived his right to trial and pleaded guilty, the Court considers whether he waived his right to collaterally attack his sentence under the plea agreement.

"Plea agreements are contractual in nature and are measured by contract law standards." *United States v. Keller*, 902 F.2d 1391, 1393 (9th Cir. 1990) (internal quotation marks omitted) (quoting *United States v. Read*, 778 F.2d 1437, 1441 (9th Cir. 1985)). "A defendant's waiver of his appellate rights is enforceable if the language of the waiver encompasses his right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made." *United States v. Joyce*, 357 F.3d 921, 922 (9th Cir. 2004); *see also United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993) (holding that a defendant may waive the right to collateral review). The court "looks to the

16

circumstances surrounding the signing and entry of the plea agreement to determine whether the defendant agreed to its terms knowingly and voluntarily." *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996). The court "must also focus [sic] upon the language of the waiver to determine its scope." *Id.* "[W]hether the district court informed the defendant of [his] appellate rights and verified [his] intent to forfeit them" is also relevant. *United States v. Anglin*, 215 F.3d 1064, 1066 (9th Cir. 2000**).**

Here, Petitioner entered into a plea agreement with the Government. (ECF No. 24.) According to the terms of the plea agreement, Petitioner waived his rights to appeal and collateral attack except for a claim for ineffective assistance of counsel. (*Id.* at ¶ XI.) Furthermore, Petitioner represented that the plea agreement was knowing and voluntary, that he had "discussed the terms of this agreement with defense counsel and fully underst[ood] its meaning and effect," and that he "consulted with counsel and [was] satisfied with counsel's representation." (*Id.* at ¶¶ VI, XIV, XV.) Petitioner initialed each page of the Plea Agreement and signed the final page under penalty of perjury. (*Id.*) Furthermore, Petitioner was addressed in open court, pursuant to Federal Rule of Criminal Procedure 11. Finally, the Magistrate Judge confirmed that Petitioner specifically waived his right to appeal with the guilty plea. (ECF No. 47 at 17-18.)

Petitioner's plea agreement is enforceable because the surrounding circumstances indicate the plea agreement was made knowingly and voluntarily, and he waived his right to collaterally challenge his conviction except for an IAC claim. Therefore, the Court DENIES the claim challenging the indictment. Nonetheless, even if Petitioner did not waive his right to collaterally challenge his conviction, his claim still fails.

## C. Challenge to the Indictment

Petitioner claims that the Government secured the indictment against Petitioner using "misleading statements." (ECF No. 53 at 21.) He claims that as to Count 1, he was

not a prohibited person in possession of a firearm because his prior conviction in state court had been set aside, and dismissed in a state court order on April 20, 2005 and modified on December 13, 2007. (*Id.* at 17-18.) As to Counts 2 and 3, Petitioner claims he did not have the "mens rea" to commit the crime because he did not know he was an "unlawful" user of marijuana and other medically prescribed drugs because in a reasonable person's mind, a medical marijuana card prescription for medicine makes a person a "lawful" user. (*Id.* at 19.) Respondent responds that the issues as to Count 1 and 2 are moot because they were dismissed by this Court. As to Count 3, the indictment and plea agreement make clear that he made a material misrepresentation that he was not using marijuana when he purchased the firearm and in fact the question on the ATF form states in bold letters, **"Warning: The use or possession of marijuana remains unlawful under Federal Law regardless of whether it has been legalized or decriminalized for medicinal or reactional purposes in the state where you reside."** (ECF No. 53, Ex. A-15.)

As to Petitioner's challenge to Counts 1 and 2 of the indictment, they are moot because they were dismissed as part of the plea agreement, (ECF No. 32). *See United States v. Boeckman*, 993 F.2d 884, 1993 WL 147314 at *1 (9th Cir. 1993) (§ 2255 challenge to the sufficiency of the evidence on counts in indictment that were dismissed under a plea agreement were moot); *see e.g., United States v. Miller*, 387 F. Supp. 1097, 1100 (D. Conn. 1975) (challenge to counts in the indictment moot based on agreement with the government dismissing them). As to the challenge to Count 3, Petitioner claims that he did not know he was an "unlawful" user of marijuana as there is "constitutional vagueness" on the ATF Form 4473 because by asking whether one is an "unlawful" user, there must be instances of "lawful" use. However, in this case, because Petitioner plead guilty, he admitted all factual allegations contained in the indictment. *See United States*

18

*v. Mathews,* 833 F.2d 161, 164 (9th Cir. 1987) ("a guilty plea conclusively proves the factual allegations contained in the indictment"). Under the plea agreement, Petitioner plead guilty to Count 3 and the government agreed to dismiss Counts 1 and 2. Therefore, his claim of insufficiency of the evidence to support the indictment under Count 3 is barred. *See Boeckman*, 1993 WL 147314 at *1.

Furthermore, Petitioner's argument that he believed he was a lawful user of marijuana is not supported by the record. As the Government points out, the ATF Form 4473 specifically highlights that use of marijuana is unlawful under Federal law even though it may be legal in California. (ECF No. 53-1, Ex. A-15 at 55.) There is no vagueness in the question asked.

In his motion to strike, Petitioner summarily argues, without legal authority, that based on the arguments and facts presented in the Government's opposition, it has triggered the request for the production of grand jury transcripts concerning Petitioner's mental condition as well as whether he was a prohibited felon incapable of buying a firearm. (ECF No. 58 at 19.) The Government responds that Petitioner's motion is moot because Counts 1 and 2 were dismissed, and the request for grand jury transcript is speculative. (ECF No. 61 at 10.)

Rule 6(e) of the Federal Rules of Criminal Procedure ("Rule") governs secrecy in Grand Jury proceedings and provides a limited list of exceptions for disclosure. Fed. R. Crim. P. 6(e). A defendant seeking a request to produce grand jury transcripts bears a burden of overturning a presumption of secrecy. *See Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) ("[W]e start with a long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts.")). Rule 6(e)(3)(E)(ii) provides that "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other

19

conditions that it directs—of a grand jury . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before a grand jury[.]" Fed. R. Crim. P. 6(e)(3)(E)(ii). Disclosure of grand jury proceedings is available only by court order, and a defendant bears the burden of establishing a "particularized need" or "compelling necessity" for disclosure which outweighs the policy of grand jury secrecy. Fed. R. Crim. P. 6(e); *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979).

Here, except for speculation, Petitioner provides no compelling reason or particularized need for the grand jury transcript. Accordingly, the Court DENIES Petitioner's request for grand jury transcripts.

**D. Ineffective Assistance of Counsel**

Petitioner argues that he was denied his right to effective assistance of counsel because Petitioner's defense counsel "did not obtain an *ex parte* psychological evaluation" to determine whether Petitioner could have formed the requisite intent for the charges against Petitioner and whether Petitioner "could effectively and meaningfully assist in his own defense." (ECF No. 53 at 23.) Respondent argues that defense counsel was aware of Petitioner's mental state based on visits with Petitioner and discovery that was produced in the case and defense counsel was not ineffective and the claims are speculative. (ECF No. 57 at 18-19.)

A defendant claiming ineffective assistance of counsel ("IAC") must show both (1) deficient performance under an objective standard of reasonableness and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter,* 131 S. Ct. 770, 787 (2011) (quoting *Strickland*,

20

466 U.S. at 687). Defendant must overcome a strong presumption that counsel "rendered adequate assistance . . . in the exercise of reasonable professional judgement," in the form of a reasonable trial strategy. *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). To demonstrate prejudice, the petitioner must show that "but for counsel's unprofessional errors," there is a reasonable probability "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome"); *see Richter,* 131 S. Ct. at 792 ("The likelihood of a different result must be substantial, not just conceivable").

Petitioner contends that he was denied effective assistance of counsel by his failure to investigate Petitioner's psychological state. (ECF No. 53 at 22-25.) Relying on *Weeden v. Johnson,* 854 F.3d 1063 (9th Cir. 2017), Petitioner asserts that when the only plausible defense turns on whether the client had the requisite mens rea to be found guilty of the crime, counsel has a duty to investigate the client's mental state. (ECF No. 53 at 23-24.) More specifically, Petitioner urges that counsel cannot claim it was a tactical reason not to investigate because Count 3 turns on whether Petitioner knowingly made a false statement and it was unlikely that Petitioner could form the specific intent to make a false statement on a firearm application because the prolonged use of prescribed medication may have caused a psychological imbalance. (*Id.*)

However, Petitioner's argument improperly relies on the incident ███████ ████████████████████████████████████████████████████████████ ██████ . (ECF. No. 56, Ex. A-6, MCC/BOP Medical Records, Bates 94 (UNDER SEAL).) Even though the medical records explicitly attribute Petitioner's inability to appreciate the wrongfulness of his actions to the ██████████████ , Petitioner suggests that this incident shows that he also could not form specific intent with respect

21

to Count 3, which occurred almost an entire year prior on September 9, 2017. As such, a psychological exam at the time of his arrest and shortly thereafter would not have demonstrated his mental state back on September 9, 2017. Therefore, Petitioner's counsel was not deficient in not seeking a psychological evaluation.

Next, Petitioner argues his defense counsel had a duty to investigate his mental health for purposes of his defense during April and May of 2018. However, even if Petitioner's counsel had a duty to investigate Petitioner's mental health prior to the plea deal, Petitioner has not shown any prejudice because by May 16, 2018, Petitioner was mentally stable, and not taking any medication and engaged in treatment. Therefore, by the time of the plea discussions in June/July 2018 he was competent to make a reasoned decision among the choices available to him.

Therefore, because Petitioner has not shown the requisite deficiency in defense counsel's performance and that there was prejudice, the Court DENIES Petitioner's claim for ineffective assistance of counsel.

## D. Certificate of Appealability

To appeal a district court's denial of a § 2255 petition, a petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To satisfy this standard, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, Petitioner has failed to provide sufficient facts to demonstrate that Petitioner did not knowingly and voluntarily enter the plea agreement and understand its effect, that the indictment was secured by material misrepresentations and that defense counsel was ineffective. Therefore, the Court finds that reasonable jurists would not find

22

this Court's dismissal Petitioner's claims debatable and the Court declines to grant Petitioner a certificate of appealability.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** the petition for writ of habeas corpus under 28 U.S.C. § 2255 and **DENIES** a certificate of appealability. The Court also DENIES Petitioner's motion to strike the Government's response and exhibits and motion to order grand jury transcripts, (ECF No. 58). The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

Dated: June 4, 2021

Hon. Gonzalo P. Curiel
United States District Judge

19cv1489-GPC
18cr1653-GPC